NAME: Medina Mauricio , PRO SE
REGISTER NO: 1341l- 104
FCI LOMPOC CORRECTIONAL INSTITUTION
3600 GUARD ROAD
LOMPOC, CA 93436

*Fee due*



FILED
CLERK, U.S. DISTRICT COURT

DEC - 5 2022

CENTRAL DISTRICT OF CALIFORNIA
BY        eva        DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| I Medina Mauricio<br>        Petitioner, Pro Se,<br><br>        Vs.<br><br>Brian Birkholz, in his<br>capacity as Warden; and the<br>Bureau of Prisons,<br>        Respondent. | Case no. 2:22-CV-08804-VBF (PD)<br><br>EMERGENCY MOTION SEEKING IMMEDIATE<br>RELEASE FROM THE BOP AND TERMINATION<br>OF SENTENCE UNDER 28 U.S.C. § 2241<br>AND RELIEF FROM BEING HELD IN CUSTODY<br>IN VIOLATION OF THE EIGHTH AMENDMENT<br>TO THE UNITED STATES CONSTITUTION,<br>AND RELIEF FROM CONDITIONS OF<br>CONFINEMENT IN VIOLATION OF THE<br>EIGHTH AMENDMENT, AND RELIEF FROM<br>THE BOP DUE TO THEIR INABILITY TO<br>PROVIDE ADEQUATE MEDICAL CARE, AND<br>RELIEF FROM THE BOP REPEATED<br>FAILURED TO EXECUTE AND COMPLY WITH<br>THE FEDERAL COURT'S PRELIMINARY<br>INJUNCTION ORDER AND RELIEF FROM<br>FURTHER PSYCHOLOGICAL DISTRESS.<br>REQUEST RELEASE TO HOME CONFINEMENT |

I Medina Mauricio , comes before this Honorable
Court humbly and respectfully and with a great sense of urgency
moves this Court to grant my motion for immediate release from

the custody of the Bureau of Prisons based on numerous [E]xtraordinary and [C]ompelling [R]easons and [C]ircumstances described herein:

1) Substandard medical care with frequently inadequate medical treatment occurring or delayed in situations where timely treatment is critical for a favorable out come to the inmate.  And at times the medical care of diagnostic work up is lacking, and at times even incompetent.

2) Medical providers-EMT (Emergency Medical Technicians) that are poorly trained in CPR & only using BLS (Basic Life Support) during life threatening situations requiring CPR using ACLS (Advanced Cardiac Life Support).  Pharmacy Technician positions filled by EMT's dispensing prescription medication without pharmacist supervision or any pharmacy training to warn inmate patients of adverse medication side effects or multiple medication interactions. Physicians, physician assistants, and nurse practitioners giving often inadequate medical care or mistaken diagnoses/incompetent medical treatment.

3) The current conditions of confinement are Violations of the Fifth and the Eighth Amendment of the U.S. Constitution (Prohibition of cruel and Unusual Punishment and the Due Process Clause) and Violations of International law of Member States of the United Nations (the United States has signed) the Universal Declaration of Human Right, Article 5 (No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment).

4) The Class Action Suite, Torres v. Milusnic, Case no. 2:20-cv-04450-CBM-PVCx present by the ACLU attorneys to the U.S. District Court for the Central District of California on May 16, 2020 to this current date has not as yet given me relief from the unconstitutional conditions of confinement here at FCC Lompoc Correctional Institutional Prisons.

5) For the forgoing reasons I humbly ask this Court to accept my motion for Habeas Corpus, assess me individually, and grant me relief to the fullest extent this Court allows.

## INTRODUCTION

On **May** day **10** of year **2016**, I was convicted of Title **46** section **70506 F**, and Title **46** section **70503 F**, and was sentence to a term of **240** months, and **8** years of supervised release. As of today I have served **45.0** percentage of my Statutory Sentence. My projected release date (PRD) is schedule for **?** day _____ of year **2032**, and would normally be eligible for prerelease to RRC placement or home confinement/detention on **?** day **?** of year **2032**.

## MY UNDERLINING HEALTH CONDITIONS

My current underlining health conditions and conditions set forth by CDC guidelines as high risk and vulnerable to COVID-19 are as followed: **ex-smoker, hypertension I Am currently 43 Year old**

Also, I currently suffer from additional symptoms related to COVID-19, and its variants due to conditions of confinement here at Lompoc prison that are deliberate indifference by the BOP staff and their milieu of Unconstitutional Violations of the Eighth Amendment, i.e. Cruel and Unusual Punishment such as continuing a total failure of biocontainment of a very contagious and deadly Coronavirus: COVID-19 and or its multiple mutating variants known to cause serious health problems involving many organ systems which can lead to permanent organ damage (long COVID) or death. There is continuing no social distancing between inmates, buildings that have been deem demolished but usable, poor

ventilation, over-crowding of inmates, contaminated surfaces
(fomites) with pathologic microorganisms on everything in our
environment, infrequent COVID testing, inmates not reporting
COVID symptoms to avoid quarantine in Segregated Housing Units
or the Hole (Freezer).  All these things along with becoming
infected with COVID multiple times, and for some inmates creates
psychological/post traumatic stress disorder or PTSD type of
symptoms and pathological health problems for myself and many
other inmates.

## REGARDING THE LOMPOC CLASS ACTION LAWSUIT

Pending in this Central District Court of California is
a civil matter regarding inmates Unconstitutional Conditions
of Confinement in Violation of the Eighth Amendment to the U.S.
Constitution under 28 U.S.C. § 1331, and petitioner seeks relief
from being held in custody in Violation of the Eighth Amendment
to the U.S. Constitution under 28 U.S.C. § 2241, in addition,
this Central District Court has Jurisdiction to grant Declaratory
Judgement Act under 28 U.S.C. § 2201 alleging that the Respondent,
or Bureau of Prisons were violating their Eighth Amendment Rights
at FCC Lompoc by (i) failing to make full use of their **Home Confinement
and Compassionate Release Authority,** and (II) failing to provide
and implement adequate measures to prevent the spread of COVID-19
at FCC Lompoc, and (III) the inadequate and mediocre medical
care provided by the BOP Health Department staff because the
BOP is **ONLY CERTIFIED FOR AMBULATORY CARE SERVICES.**  Exhibit _15_ .

## LAWSUIT RECITAL

On May 16, 2020, a group of petitioners file a complaint
with the Central District Court of California against the Bureau
of Prisons at FCC Lompoc alleging (i) Unconstitutional Conditions
of Confinement in Violation of the Eighth Amendment to the U.S.

Constitution pursuant to Title 28 U.S.C. § 2241 and 2243; and
(2) Unconstitutional Conditions of Confinement in Violation
of the Eighth Amendment to the U.S. Constitution pursuant to
the United States Constitution, Amendment VIII, 28 U.S.C. §
1331; and 5 U.S.C. § 702 for Injunction Relief for Deliberate
Indifference upon a group of prisoners housed at Federal Correction
Complex (FCC Lompoc) within the Federal Bureau of Prisons (BOP).

On July 14, 2020, the Honorable Judge Consuelo B. Marshall
had reasons to belief that the complaint filed had merit and
have met all rules set forth under F.R.C.P. Rule 23 **and the
likelihood to prevail**, as a result, she issued a Preliminary
Injunction Order against the bureau of Prisons (BOP), Case no.
2:20-cv-4450-CBM-PVCx (Doc. 45) Ordering the BOP to immediately
review all class members at FCC Lompoc that have met all the
criterias set forth under the CARES ACT and the Attorney General
William Barr's Memorandum of March 27, and April 3, 2020 to
be granted and release for home confinement, Judge Consuelo
B. Marshall was well aware of the many other alternative avenues
available at her disposal for releasing prisoners to home for
Unconstitutional Violations of Conditions of Confinement, but
she gave the Bureau of Prisons not one but multiple chances
to **EXERCISE** their "Discretionary Authority" under [E]xtraordinary
and [C]ompelling Circumstances and Reasons to release eligible
inmates to the safety of their home until the Pandemic is lifted
or permanently to served the remainder of their sentence.

The Bureau of Prisons **NOT ONLY IGNORED** all of Judge Consuelo's
Order but SIMPLY DIDN't HAVE TO DO ANYTHING AT ALL BECAUSE the
BOP knew well that doing so would render the BOP in Violations
of the statutory law governing the CARES ACT and the AG Barr's
Memoranda.  It remains the same today until the Court takes
full custody of the class and at the Courts full discretion
decides after evaluating from the list already been vetted and
thoroughly reviewed provided by the BOP's Health Services

Administrator on a monthly basis as Order by Judge Consuelo
B. Marshall for release for home confinement or grant the eligible
class members for reduction in sentence under the Habeas Corpus
Relief Act as an alternatives in the "FCC Lompoc Class Action
Lawsuit's" original complaints and the Amended Complaints as
well.  Exhibit  A .

## EXTRAORDINARY AND COMPELLING
## ARGUMENTS  AND CLAIMS FOR RELIEF

It's undisputed COVID-19 has taken numerous lives and
debilitated numerous amount of inmates not just at FCC Lompoc
but all the prisons systems and detention centers nationwide
and show no efforts of slowing down.  While serving my imposed
sentence for the crime I was convicted of, also, I'm fighting
to avoid further harm from being infected if I should contract
COVID-19 and its multiple variants which is extraordinary difficult
to do when each inmate is confined in very over-crowded conditions
with no adequate social distancing between inmates.

Wheras, on May 16, 2020, several FCC Lompoc inmates brought
action by filing a Complaint---Class Action Lawsuit for Declaratory
Relief, Injunctive Relief, and petition for relief under the
Writ of Habeas Corpus legislation;
Whereas, on March 26, 2020, Attorney General William Barr
issued a memorandum that directed the BOP to "Prioritize the
use of your various statutory authorities to grant home confinement
for inmates seeking transfer in connection with the ongoing
COVID-19 pandemic," and provided a non-exhaustive list of discretionary
factors for evaluating inmates for home confinement.  Exhibit 14 ;

Whereas, on March 27, 2020, Congress enacted the Coronavirus
Aid, Relief, and Economic Security Act or the CARES ACT, which
authorized the Director of the Bureau of Prisons to lengthen the

amount of time prisoners can be placed on home confinement under Section 3624 (c)(2), provided that the Attorney General makes a finding that "Emergency conditions will materially affect the funtioning of the Bureau of Prisons";

**Whereas**, on April 3, 2020, Attorney General William Barr issued a revised memorandum in which he found the "emergency conditions are materially affecting the functioning of the Bureau" and directed the Bureau to "move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions" while cautioning that the BOP must continue to make "individualized [Home Confinement] determinations";

**Whereas**, on July 14, 2020, United States District judge Consuelo B. Marshall entered an order in filed class action lawsuit by issuing a Preliminary Injunction "The Preliminary Injunction Order" [Dkt. no. 45] that provisionally certified a class of FCC Lompoc inmates who are medically vulnerable to COVID-19 and set forth certain directives as to their reviewed for placement on home confinement;

**Whereas**, the Court Order FCC Lompoc to immediately evaluate all current and future people in post-conviction custody at FCI Lompoc and USP Lompoc and the Satellite Prison Camp over age 50, and all current and future class members in post-conviction custody at FCI Lompoc and USP Lompoc of any age with underlying health conditions including Chronic Obstructive Pulmonary Disease (COPD); serious heart conditions such as heat failure, coronary artery disease, or cardiomyopathies; Type 2 diabetes; chronic kidney disease; sickle cell disease; immunocompromised state from a solid organ transplant; obesity (body mass index of 30 or higher); asthma; cerebrovascular disease; cystic fibrosis; hypertension or high blood pressure; immunocompromised state from blood or bone marrow transplant; immune deficiencies; HIV; or those who use corticosteroids, or use other immune weakening medicines; neurologic conditions such as dementia; liver diseases; pulmonary fibrosis; thalassemia; Type 1 diabetes; and smokers,

as defined in the Preliminary Injunction [Dkt no. 45, at page 48];

Whereas, the Preliminary Injunction Order required the Respondent to file a list of provisional class members with the Court along with a declaration explaining the process used to identify the provisional class members in the list;

Whereas, the Respondents have been reviewing all provisional class members for potential home confinement release and filing declarations setting forth their decisions in the regard;

Whereas, on the BOP ONLY has statutory authority to transfer prisoners to home confinement under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541;

Whereas, on October 2020 Judge Consuelo B. Marshall issued another Order demanding the BOP to "Comply and enforce the injunction order", the BOP ignored it again and no action was taken;

Whereas, the settlement suggested that "the parties desire to resolve the present litigation on the mutually acceptable terms set forth below, which they agree are a fair, reasonable and adequate resolution of this case---NOTHING WAS FAIR, NOR AQUITABLE TO BOTH SIDE, NOR ANYTHING STATES THAT THE BOP WILL COMPLY. The ONLY benefactor in the so call Settlement Agreement is the Bureau of Prisons and in its entirety.

Whereas, on August 27, 2021, a Report and Recommendation was drafted and proposed to Judge Consuelo B. Marshall and was later approved by Judge Marshall demanding the BOP to execute and carry out the Order, again, the BOP completely ignored it again. Judge Consuelo B. Marshal never once penalized the BOP's defiant behavior for their abused of power.

For all the forgoing reasons stated above, this motion for relief should be granted and if the Honorable Judge deems additional restrictions is necessary for this requested relief to protect the Court, the community, and myself, I will humbly accept and will honor all conditions stipulated set forth by this Honorable Court.

## RELIEF SOUGHT

For the foregoing reasons stated herein, this Court should grant this petition for immediate release and terminate my custody from the Bureau of Prisons and end my sentence as afforded under Title 28 U.S.C. § 2241 Habeas Corpus Relief.

## CONCLUSION

Base upon all the [E]xtraordinary and [C]ompelling [R]easons, I _Medina Mauricio_, humbly and respectfully request for this Honorable Court to reduce my term of imprisonment to time served and release me from the custody of the Bureau of Prisons within 48 hours of GRANTING THIS MOTION as allowed under 28 U.S.C. § 2241 Habeas Corpus Relief.

## UNDER PENALTY OF PERJURY

Respectfully submitted and, pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the information contained in this motion is  true and correct to the best  of my knowledge.


Executed on this __11__ day of __November__, 2022, at 3600 Guard Road, Lompoc, California.


Petitioner _Medina Mauricio_
Register no. _13411-104_
FCI Lompoc Correctional Institution
3600 Guard Road
Lompoc, CA 93436



EXHIBIT

1

PETITIONER Medina Mauricio, PRO SE
REGISTER NO 13411-104
FCI LOMPOC CORRECTIONAL INSTITUTION
3600 GUARD ROAD
LOMPOC, CA 93436

EMERGENCY MOTION SEEKING IMMEDIATE RELEASE
FROM THE BOP AND TERMINATION OF SENTENCE
UNDER 28 U.S.C. § 2241 AND RELIEF FROM
BEING HELD IN CUSTODY IN VIOLATION OF
THE EIGHTH AMENDMENT TO THE UNITED STATES
CONSTITUTION, AND RELIEF FROM CONDITIONS
OF CONFINEMENT IN VIOLATION OF THE EIGHTH
AMENDMENT, AND RELIEF FROM THE BOP DUE TO
THEIR INABILITY TO PROVIDE ADEQUATE MEDICAL
CARE, AND RELIEF FROM THE BOP REPEATED
FAILURED TO EXECUTE AND COMPLY WITH THE
FEDERAL COURT'S PRELIMINARY INJUNCTION
ORDER AND RELIEF FROM FURTHER
PSYCHOLOGICAL DISTRESS.

Mail to:

United State Court House
Room 1053
411 West. Fourth Street
Santa Ana, California 92701-4516

PRO SE PETITIONER
SEEKING RELIEF UNDER 28 U.S.C. § 2241
WRIT OF HABEAS CORPUS


TABLE OF CONTENTS

1- Motion SEEKING RELIEF UNDER HABEAS CORPUS

2- Release Plan

3- Medical Records

4- Custody Classification info

5- Sentence Computation info

6- Exhibit A (ACLU Lawsuit "Amended Complaint page 1")

7- Exhibit B (ACLU Lawsuit "First Claim for Relief")

8- Exhibit C (ACLU Lawsuit "Second Claim for Relief")

9- Exhibit D (ACLU Lawsuit "Relief Sought")

10- Exhibit E (Preliminary Injunction Relief Granted)

11- Exhibit F (ACLU Correspondence updating class members)

12- Exhibit G (News article regarding "Ex-Officer is sentence for Deliberate Indifference")

13- Exhibit H (The Attorney General Barr's memorandum "Directing the BOP to release high risk inmate that's vulnerable to COVID-19 for release if they have met the CARESS ACT guideline". ONLY A FEW INMATES OUT OF APPROXIMATELY 3500 QUALIFIED.

14- Exhibit I (BOP wants "WANTS RELEASE OF CLAIMS AND ADMISSION OF NO WRONG DOING, AND STRIPPING ALL CLASS MEMBERS OF ALL FUTURE CLAIMS OF HABEAS CORPUS FILING AS REQUESTED IN THE PROPOSE SETTLEMENT AGREEMENT)

15- BOP Seeks only "AMBULATORY HEALTH CARE" SERVICES ONLY

# EXHIBIT 2

<u>INMATE RELEASE PLAN</u>

Name: medina Mauricio          Register Number: 13411-104

Please fill out the following and return to your Case Manager
as soon as possible.


° Where will you live (House/Apt?). Full address and
phone number?: CODY WAY 9660
STOCTON. CA
95209

° Who will you live with and what is there relationship
to you?: David martinez medina
BROTHER


° Any health concerns of the people living in the house?:
NO


° How do you plan on getting to your Home Confinement
location? Do you have a person who can transport you
directly? If so, name and relationship of that person?:
BY BUS


° Are you able to self-quarantine at your residence?:
Yes

04/11/2022 @ PM

EXHIBIT 3

# Federal Bureau of Prisons
## SCREENINGS

| | |
|---|---|
| Inmate Name:    MEDINA, MAURICIO MARTINEZ | Reg #:    13411-104 |

| | | | |
|---|---|---|---|
| Date of Birth:    03/03/1980 | Sex:  M | Race:  WHITE | Facility:  VVM |
| Encounter Date: 04/15/2021 17:00 | | Provider:  Mank, Michael DO | Unit:    E01 |

**Screenings:**

### COVID-19

#### Exit Summary

Yes: Pre-Release/Transfer Quarantine (Begin and End Date: 2/21/2021 - 4/16/2021 (BLUE MOVEMENT)),
COVID Test Result (Results/Date: Negative 3/1/2021-3/29/2021 (BLUE MOVEMENT)), History of COVID
Isolation (Begin and End Dates: 5/4/2020 - 5/21/2020)

No: COVID-19Janssen vaccine received, COVID-19 Pfizer vaccine received, COVID-19 Moderna vaccine
received


Cosign Required:No

Completed by Mank, Michael DO on 04/15/2021 17:01.



# Bureau of Prisons
## Health Services
## Medication Summary
### Historical

| | | | |
|---|---|---|---|
| Complex: LOX--LOMPOC FCC | Begin Date: 01/01/2020 | End Date: 01/01/2021 | |
| Inmate: MEDINA, MAURICIO MARTINEZ | Reg #: 13411-104 | Quarter: G04-009L | |

**Medications listed reflect prescribed medications from the begin date to end date on this report.**

**Allergies:**                    Denied

## Active Prescriptions

Azithromycin Tab 250 MG, [Z-Pak]

Take 2 tablets (500 MG)  by mouth on day one, then take 1 tablet daily for 4 days ***It is important to finish ALL of this medication*** ***self carry***

**Rx#:**  329428-LOX          **Doctor:**  Dhaliwal, Jaspal (MAT) MD

**Start:**  07/30/20          **Exp:**  08/04/20                    **Pharmacy Dispensings:** 6 Tab in 5 days



# Bureau of Prisons
## Health Services
## Clinical Encounter

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | MEDINA, MAURICIO MARTINEZ | | | Reg #: | 13411-104 |
| Date of Birth: | 03/03/1980 | Sex: M | Race: WHITE | Facility: | LOF |
| Encounter Date: | 07/29/2020 07:53 | Provider: | Mishchenko, Galyna FNP | Unit: | G03 |

Mid Level Provider - Sick Call Note encounter performed at Health Services.

## SUBJECTIVE:

COMPLAINT  1       Provider:  Mishchenko, Galyna FNP

Chief Complaint:  Headache

Subjective: 40 y/o male c/o HA, SOB, CXR- in 02/2020- confirmed lung opacity with possible atelectasis, c/o occasionally CP on breathing, denies cough or SOB, today normal V/S including O2Sat, - COVID 19 tx with Z-pack prescribed, recommended CXR -as PA and lateral ordered. DKNA

Pain:      No

## OBJECTIVE:
### Temperature:

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 07/29/2020 | 07:30 LOX | 97.9 | 36.6 | | Cagney, Elsa RN |

### Pulse:

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 07/29/2020 | 07:30 LOX | 73 | | | Cagney, Elsa RN |

### Respirations:

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 07/29/2020 | 07:30 LOX | 18 | Cagney, Elsa RN |

### Blood Pressure:

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 07/29/2020 | 07:30 LOX | 118/77 | | | | Cagney, Elsa RN |

### SaO2:

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 07/29/2020 | 07:30 LOX | 98 | | Cagney, Elsa RN |

### Weight:

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 07/29/2020 | 07:52 LOX | 187.0 | 84.8 | | Mishchenko, Galyna FNP |

### Exam:
**General**
  Appearance
    Yes: Appears Well, Alert and Oriented x 3
**Nose**
  **General**
    Yes: Inflamed Turbinates, Turbinates Boggy, Clear Discharge
**Mouth**
  **Pharynx**
    Yes: Inflammation, Erythema, Sinus Drainage
    No: Tonsilar Exudate, Swelling, Tonsilar Hypertrophy
**Pulmonary**

BP-A0807    INFLUENZA VACCINE CONSENT – INMATES
Sep 11

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

*(*Note: CDC Vaccine Information Statements in multiple languages available at: www.cdc.gov/vaccines/pubs/vis/)*

I have been provided a copy of the Vaccine Information Statement* for Influenza Vaccine dated 8/7/15. I have had the opportunity to ask questions about the benefits and risks of vaccination.

☑ I consent to receive the influenza vaccine at this time.

Health Questions Prior to Influenza Vaccination *(Check Yes or No)*

| Yes | No | Health Questions |
|-----|-----|------------------|
| | ✓ | Are you sick today? *(if moderately to severely ill should postpone vaccination)* |
| | ✓ | Do you have allergy to eggs? |
| | | Have you ever had serious reaction to influenza vaccine? |
| ✓ | ✓ | If so, describe: |
| | ✓ | Have you had Guillain-Barré syndrome (progressive paralysis) |

| Inmate Signature | Witness Signature    A. WONG | Date |
|------------------|------------------------------|------|
| Medina  Mauricio | PARAMEDIC    FCC LOMPOC<br>☐ A. Wong NR-Paramedic<br>  FCC LOMPOC<br>☐ Other: | 1-25-20?? |

☐ I decline to receive the influenza vaccine at this time.

| Inmate Signature | Witness Signature | Date |
|------------------|-------------------|------|
| | ☐ A. Wong NR-Paramedic<br>  FCC LOMPOC<br>☐ Other: | |

| (PRINT)  Inmate Name (Last, First) | | Register | Facility |
|-----------------------------------|---|----------|----------|
| Medina Mauricio | | 13411-104 | FCC Lompoc |

Sensitive But Unclassified
COPY

Prescribed By P6190

BP-S358.060
SEP 05

# MEDICAL TREATMENT REFUSAL

CDFRM

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

2-28-2019
Date

I, MAURICIO MEDINA _____ 13411-104 __ , refuse treatment recommended by the Federal
Bureau of Prisons Medical staff for the following condition(s):

**DESCRIBE CONDITION IN LAYMAN'S TERMINOLOGY:**

Inmate with positive TB skin test

**The following treatment(s) was/were recommended:**

Prophylaxis treatment for latent TB offered

**Federal Bureau of Prisons Medical staff members have carefully explained to me that the following
possible consequences and/or complications may result because of my refusal to accept treatment:**

Inmate refusal could lead to active TB, complications and death.

**I understand the possible consequences and/or complications, listed above, and still refuse
recommended treatment. I hereby assume all responsibility for my physical and/or mental condition, and
release the Bureau of Prisons and its employees from any and all liability for respecting and following my
expressed wishes and directions.**

BALOGUN, VICTORIA NP        2-28-2019
Counseled by                Date

X _____  02/28/19
Patient's Signature         Date

Sensitive But Unclassified
COPY

Signature of Witness        Date

LOF–LOMPOC FCI

**Bureau of Prisons**
**Health Services**
**Health Problems**

Reg #: 13411-104    Inmate Name: MEDINA, MAURICIO MARTINEZ

## Current

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| LTBI Prophy Report<br>02/28/2019 12:57 EST Balogun, Victoria NP<br>hx +PPD 10mm 2/17/2017, | III | ICD-10 | 795.5D | 02/28/2019 | Current | |
| 08/01/2017 09:16 EST Pangilinan, P. MLP<br>hx +PPD 10mm 2/17/2017, CXR negative 1/9/2017--refused INH prophylaxis 2/17/2017 | III | ICD-10 | 795.5D | 02/17/2017 | Current | |
| 02/17/2017 10:45 EST Garcia, Hector RN/IDC/IOP | III | ICD-10 | 795.5D | 02/17/2017 | Current | |
| Acute pharyngitis, unspecified<br>07/29/2020 11:16 EST Mischenko, Galyna FNP | | ICD-10 | J029 | 07/29/2020 | Current | |
| Inguinal hernia<br>10/31/2017 14:05 EST Mischenko, Galyna FNP<br>(L) scrotal/ inguinal hernia | | ICD-10 | K4090 | 10/31/2017 | Current | |
| 10/31/2017 14:00 EST Mischenko, Galyna FNP<br>(L) scrotal hernia | | ICD-10 | K4090 | 10/31/2017 | Current | |
| Inguinal hernia<br>08/01/2017 09:17 EST Pangilinan, P. MLP<br>hx left inguinal hernia, 2001 | | ICD-10 | K4090 | 2001 | Current | |
| 01/12/2017 12:52 EST Pangilinan, P. MLP<br>hx.left inguinal hernia, 2001 | | ICD-10 | K4090 | 2001 | Current | |
| 01/05/2017 18:31 EST Reynaldo, A. MLP | | ICD-10 | K4090 | 01/05/2017 | Current | |
| Low back pain<br>09/17/2018 13:34 EST Baker, Stephen PA-C<br>Low and mid back pain - muscle spasms | | ICD-10 | M545 | 09/17/2018 | Current | 08/01/2017 |
| Body mass index (BMI) 27.0-27.9, adult<br>08/01/2017 09:12 EST Pangilinan, P. MLP<br>BMI= 27.6 (overweight) | | ICD-10 | Z6827 | 08/01/2017 | Current | |
| Counseling, unspecified<br>08/01/2017 09:12 EST Pangilinan, P. MLP<br>HIV pretest counseling completed 1/12/2017, 8/1/2017 | | ICD-10 | Z719 | 01/12/2017 | Current | |
| 01/12/2017 12:52 EST Pangilinan, P. MLP<br>HIV pretest counseling completed 1/12/2017 | | ICD-10 | Z719 | 01/12/2017 | Current | |

COPY<br>Sensitive But Unclassified<br>SBU

Reg #: 13411-104

Inmate Name: MEDINA, MAURICIO MARTINEZ

**Resolved**

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| LTBI Pending Tx. Eval<br>02/17/2017 10:45 EST  Garcia, Hector RN/IDC/IOP<br>+PPD 10mm 1/7/2017 FDC Miami<br>CXR negative 1/9/2017 No acute Pathology noted | III | ICD-10 | P795.5 | 01/12/2017 | Resolved | 02/17/2017 |
| 01/12/2017 12:52 EST  Pangilinan, P. MLP<br>+PPD 10mm 1/7/2017 FDC Miami<br>CXR negative 1/9/2017 | III | ICD-10 | P795.5 | 01/12/2017 | Current | |
| Confirmed case COVID-19<br>05/21/2020 00:36 EST  Figlenski, Jessica WXRO<br>QI/IPC/RN | | ICD-10 | U07.1 | 05/04/2020 | Resolved | 05/20/2020 |
| 05/10/2020 16:33 EST  Figlenski, Jessica WXRO<br>QI/IPC/RN | | ICD-10 | U07.1 | 05/04/2020 | Current | |
| Body mass index (BMI) 26.0-26.9, adult<br>08/01/2017 09:12 EST  Pangilinan, P. MLP<br>BMI= 26.2 | | ICD-10 | Z6826 | 01/12/2017 | Resolved | 08/01/2017 |
| 01/12/2017 13:10 EST  Pangilinan, P. MLP<br>BMI= 26.2 | | ICD-10 | Z6826 | 01/12/2017 | Current | |

**Total:** 10

BP-A0807    INFLUENZA VACCINE CONSENT – INMATES
Sep 11

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

*(*Note: CDC Vaccine Information Statements in multiple languages available at: www.cdc.gov/vaccines/pubs/vis/)*

I have been provided a copy of the Vaccine Information Statement* for Influenza Vaccine dated 8/7/15. I have had the opportunity to ask questions about the benefits and risks of vaccination.

☑ I consent to receive the influenza vaccine at this time.

**Health Questions Prior to Influenza Vaccination** *(Check Yes or No)*

| Yes | No | Health Questions |
|-----|-----|------------------|
|  | ✓ | Are you sick today? *(if moderately to severely ill should postpone vaccination)* |
|  | ✓ | Do you have allergy to eggs? |
|  |  | Have you ever had serious reaction to influenza vaccine? |
| ✓ |  | If so, describe: |
|  | ✓ | Have you had Guillain-Barré syndrome (progressive paralysis) |

| Inmate Signature | Witness Signature | Date |
|------------------|-------------------|------|
| Medina   Mauricio | A. WONG PARAMEDIC<br>FCC LOMPOC<br>☐ A. Wong NR-Paramedic<br>FCC LOMPOC<br>☐ Other: | 1-25-201? |

☐ I decline to receive the influenza vaccine at this time.

| Inmate Signature | Witness Signature | Date |
|------------------|-------------------|------|
|  | ☐ A. Wong NR-Paramedic<br>FCC LOMPOC<br>☐ Other: |  |

| (PRINT) Inmate Name (Last, First) | | Register | Facility |
|-----------------------------------|---|----------|----------|
| Medina Mauricio | | 13411-104 | FCC Lompoc |

Prescribed By P6190

Sensitive But Unclassified
COPY

BP-S358.060
SEP 05

## MEDICAL TREATMENT REFUSAL

CDFRM

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

2-28-2019
Date

I, __MAURICIO MEDINA_____ __13411-104___ , refuse treatment recommended by the Federal Bureau of Prisons Medical staff for the following condition(s):

**DESCRIBE CONDITION IN LAYMAN'S TERMINOLOGY:**

Inmate with positive TB skin test

**The following treatment(s) was/were recommended:**

Prophylaxis treatment for latent TB offered

**Federal Bureau of Prisons Medical staff members have carefully explained to me that the following possible consequences and/or complications may result because of my refusal to accept treatment:**

Inmate refusal could lead to active TB, complications and death.

I understand the possible consequences and/or complications, listed above, and still refuse recommended treatment. I hereby assume all responsibility for my physical and/or mental condition, and release the Bureau of Prisons and its employees from any and all liability for respecting and following my expressed wishes and directions.

BALOGUN, VICTORIA NP     2-28-2019
Counseled by                     Date

X _____     02/28/19
  Patient's Signature                Date

_____
Signature of Witness        Date

LOF–LOMPOC FCI

```
  LOF82  606.00  *      MALE CUSTODY CLASSIFICATION FORM      *      12-01-2022
PAGE 001 OF 001                                                      12:05:59
                          (A) IDENTIFYING DATA
REG NO..: │13411-104│          FORM DATE: 11-18-2022          ORG: LOF
NAME....: MEDINA, MAURICIO MARTINEZ
                                       MGTV: NONE
PUB SFTY: ALIEN,SENT LGTH             MVED:
                          (B) BASE SCORING
DETAINER: (0) NONE                SEVERITY.......: (3) MODERATE
MOS REL.: 126                     CRIM HIST SCORE: (00) 0 POINTS
ESCAPES.: (0) NONE                VIOLENCE.......: (0) NONE
VOL SURR: (0) N/A                 AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (1) ENRLD + SAT IN GED  DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
                          (C) CUSTODY SCORING
TIME SERVED.....: (3) 0-25%       PROG PARTICIPAT: (2) GOOD
LIVING SKILLS...: (2) GOOD        TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE        FAMILY/COMMUN..: (4) GOOD


                    --- LEVEL AND CUSTODY SUMMARY ---
BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
+6   +19    -3        +3       LOW          N/A             IN     DECREASE



G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```



EXHIBIT

4

```
   LOMLA          *        INMATE EDUCATION DATA       *      10-31-2022
PAGE 001 OF 001 *              TRANSCRIPT              *      13:31:38

REGISTER NO: 13411-104    NAME..: MEDINA                  FUNC: PRT
FORMAT.....: TRANSCRIPT   RSP OF: LOF-LOMPOC FCI

------------------------- EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
LOF  ESL EXEMPT ESL NEED-PERMANENTLY EXEMPT  09-20-2017 1504 CURRENT
LOF  GED SAT    GED PROGRESS SATISFACTORY    07-02-2018 1544 CURRENT

------------------------- EDUCATION COURSES -------------------------
SUB-FACL    DESCRIPTION              START DATE  STOP DATE EVNT AC LV  HRS
LOF         SP.GED RM 3 M-F 0900-1030 06-01-2022 06-28-2022  P  W  I   70
LOF         GED SPANISH A DORM COHORT 01-19-2022 06-01-2022  C  W  I    0
LOF         GED  A DORM COHORT        11-04-2021 01-19-2022  C  W  I    0
LOF         COLORED PENCIL MON & TUES 11-02-2021 11-18-2021  P  C  P   12
BSF         HORITCULTURE CLASS        06-11-2021 09-03-2021  P  C  C   96
LOF         ESL A COHORT              10-30-2020 02-18-2021  P  W  I  870
LOF         ESL G COHORT CL RM 3      08-21-2020 10-30-2020  C  W  V    0
LOF         ESL AFTERNOON CLRM 3      01-29-2020 08-21-2020  C  W  V    0
LOF         ESL MORNING CLRM 3        10-13-2017 01-29-2020  C  W  I    0
LOF         ESL AFTERNOON CLRM 3      10-05-2017 10-13-2017  C  W  I    0

------------------------- HIGH TEST SCORES -------------------------
TEST        SUBTEST       SCORE    TEST DATE    TEST FACL   FORM     STATE
CASAS       LIST PLACE    192.0    10-02-2017   LOF         2
            READ LEV A    205.0    05-09-2018   LOF         84R
            READ LEV B    212.0    10-02-2019   LOF         83R
            READ PLACE    192.0    10-02-2017   LOF         2




G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

```
 LOF82  540*23 *              SENTENCE MONITORING          *      12-01-2022
PAGE 001        *             COMPUTATION DATA             *      12:05:16
                              AS OF 12-01-2022

REGNO..: 13411-104 NAME: MEDINA, MAURICIO MARTINEZ


FBI NO...........: N9LVNPPAD          DATE OF BIRTH: 03-03-1980  AGE:  42
ARS1.............: LOF/A-DES
UNIT.............: 2 GP                QUARTERS.....: G04-009L
DETAINERS........: NO                  NOTIFICATIONS: NO

FSA ELIGIBILITY STATUS IS: INELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 02-29-2032

FINAL STATUTORY RELEASE FOR INMATE.: 05-25-2033 VIA GCT REL
        WITH APPLIED FSA CREDITS.: 270  DAYS
THE INMATE IS PROJECTED FOR RELEASE: 08-28-2032 VIA FSA REL


----------------------CURRENT JUDGMENT/WARRANT NO: 010 ------------------------

COURT OF JURISDICTION...........: FLORIDA, SOUTHERN DISTRICT
DOCKET NUMBER...................: 4:17-CR-10003(S)
JUDGE...........................: MOORE
DATE SENTENCED/PROBATION IMPOSED: 07-17-2017
DATE COMMITTED..................: 09-11-2017
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $200.00        $00.00          $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT: $00.00

-----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  859    46:1903 MARITIME DRUG
OFF/CHG: 46:70506(B)  CPWID 5KG OR MORE OF COCAINE ON BOARD A VESSEL
        SUBJECT TO THE JURISDICTION OF THE UNITED STATES (CT1);
        46:70503(A)(1)  PWID 5KG OR MORE OF COCAINE WHILE ON BOARD A
        VESSEL SUBJECT TO THE JURISDICTION OF THE UNITED STATES (CT2)

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  240 MONTHS
 TERM OF SUPERVISION............:    5 YEARS
 DATE OF OFFENSE................: 05-10-2016



G0002      MORE PAGES TO FOLLOW . . .
```

```
  LOF82  540*23 *              SENTENCE MONITORING           *      12-01-2022
PAGE 002 OF 002 *              COMPUTATION DATA              *      12:05:16
                                 AS OF 12-01-2022
```

REGNO..: 13411-104 NAME: MEDINA, MAURICIO MARTINEZ


-------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-08-2020 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 08-17-2017 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 07-17-2017
TOTAL TERM IN EFFECT............:   240 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    20 YEARS
EARLIEST DATE OF OFFENSE........: 05-10-2016

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                   05-10-2016     07-16-2017

TOTAL PRIOR CREDIT TIME.........: 433
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 1080
TOTAL GCT EARNED................: 324
STATUTORY RELEASE DATE PROJECTED: 05-25-2033
ELDERLY OFFENDER TWO THIRDS DATE: 09-09-2029
EXPIRATION FULL TERM DATE.......: 05-09-2036
TIME SERVED.....................:     6 YEARS      6 MONTHS     22 DAYS
PERCENTAGE OF FULL TERM SERVED..:  32.8
PERCENT OF STATUTORY TERM SERVED:  38.5

PROJECTED SATISFACTION DATE.....: 08-28-2032
PROJECTED SATISFACTION METHOD...: FSA REL
   WITH FSA CREDITS INCLUDED...: 270

REMARKS.......: 08/17/17 COMP CMPLT L/ALH.
                4-8-20 GCT UPDATED PURSUANT TO FSA P/JMD.




S0055     NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

# EXHIBIT 5

EXHIBIT 6

Terry W. Bird – Bar No. 49038
  tbird@birdmarella.com
Dorothy Wolpert – Bar No. 732 13
  dwolpert@birdmarella.com
Shoshana E. Bannett – Bar No. .241977
  sbannett@birdmarella.com
Kate S. Shin – Bar No. 279867
  kshin@birdmarella.com
Oliver Rocos – Bar No. 319059ʹ
  orocos@birdmarella.com
Christopher J. Lee – Bar No. 32:2140
  clee@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Naeun Rim – Bar No. 263558
  nrim@manatt.com
Ima E. Nsien – Bar No. 304096
  insien@manatt.com
David Boyadzhyan – Bar No. 3 11386
  dboyadzhyan@manatt.com
MANATT, PHELPS & PHILLIPS,
LLP
2049 Century Park East, Suite 1 700
Los Angeles, California  90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Plaintiff-Petitioners
Richard Garries. and Andrew Y barra

Donald Specter – Bar No. 83925
  dspecter@prisonlaw.com
Sara Norman – Bar No. 189536
  snorman@prisonlaw.com
Sophie Hart – Bar No. 321663
  sophieh@prisonlaw.com
Patrick Booth – Bar. No. 328783
  patrick@prisonlaw.com
Jacob J. Hutt – MJP No. 804428
  jacob@prisonlaw.com
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Facsimile: (510) 280-2704

Peter J. Eliasberg – Bar No. 189110
  peliasberg@aclusocal.org
Peter Bibring – Bar No. 223981
  pbibring@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

C. Ryan Fisher – Bar No. 312864
  cfisher@manatt.com
MANATT. PHELPS & PHILLIPS,
LLP
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Tele: (714) 371-2500
Facsimile (714) 371-2550

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RICHARD GARRIES; ANDRE W YBARRA, individually and on behalf of all others similarly situated, <br><br> Plaintiff-Petitioners., <br><br> vs. <br><br> LOUIS MILUSNIC, in his capacity as Warden of Lompoc; and MICHAEL CARVAJAL, in his capacity as Director of the Bureau of Prisons, <br><br> Defendant-Respondents. | CASE NO. 2:20-cv-04450-CBM-PVCx <br><br> **FIRST AMENDED COMPLAINT— CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR WRIT OF HABEAS CORPUS** <br><br> Immediate Relief Requested |

1 | including those pertaining to resource distribution and factors that BOP facility
2 | leadership should consider in determining an incarcerated individual's eligibility fo
3 | early release. His responsibilities include ensuring the safety of all in the BOP
4 | system and ensuring that institutions operate in an orderly fashion. Director Carvaja
5 | is aware of and has adopted and enforced policies that leave Petitioners and all those
6 | similarly situated exposed to infection, severe illness, and death due to COVID-19.
7 | He is sued in his official capacity only.

8

## III.

## JURISDICTION AND VENUE

10 | 14. This Court has jurisdiction over this action pursuant to 28 U.S.C.
11 | § 2241 because Petitioners seek relief from being held in custody in violation of the
12 | Eighth Amendment to the U.S. Constitution, and pursuant to 28 U.S.C.
13 | § 1331 for relief from conditions of confinement that are in violation of the Eighth
14 | Amendment.

15 | 15. The Court has subject-matter jurisdiction over this Petition pursuant to
16 | 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 of the Administrative Procedure
17 | Act, 28 U.S.C. § 2241 (habeas corpus) and Article I, § 9, cl. 2 of the U.S.
18 | Constitution (Suspension Clause). In addition, the Court has jurisdiction to grant
19 | declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

20 | 16. Venue is proper in the Central District of California pursuant to 28
21 | U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving
22 | rise to these claims occurred and continues to occur in this district.

23 | 17. This Court has personal jurisdiction over Warden Milusnic because at
24 | all times relevant to this action, she has been employed at Lompoc in Santa Barbara
25 | County, California, and all the actions and omissions at issue occurred at Lompoc.
26 | This Court has personal jurisdiction over Director Carvajal because at all times
27 | relevant to this action. he has set BOP policies and issued guidance that Respondent
28 | Milusnic has applied at Lompoc in Santa Barbara County, California.

# EXHIBIT 7

1    members or between the attorneys and Class members that would affect this

2    litigation.

*Editing Copy 6*

## VII.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(Eighth Amendment)

Unconstitutional Conditions of Confinement in Violation of the Eighth
Amendment to the U.S. Constitution

28 U.S.C. § 2241/28 U.S.C. § 2243

*Class versus All Defendants*

11    102.    Petitioner incorporates by reference each and every allegation

12    contained in the preceding paragraphs as if set forth fully herein.

13    103.    Petitioners bring this claim on their own behalf and on behalf of the

14    Class.

15    104.    The Eighth Amendment guarantees sentenced prisoners custody free of

16    "a condition of confinement that is sure or very likely to cause serious illness and

17    needless suffering the next week or month or year." *Helling*, 509 U.S. at 33; *see also*

18    U.S. Const. Amend VIII. The government's failure to protect the prisoners in its

19    custody from a widespread outbreak of a serious contagious disease that causes

20    potentially permanent damage or death constitutes deliberate indifference in

21    violation of the Eighth Amendment to the United States Constitution.

22    105.    Petitioners and the Class are at severe risk of contracting COVID-19

23    because 60% of prisoners have already tested positive. Petitioners and the sub-class

24    are uniquely vulnerable to serious complications or death from contracting

25    COVID-19 because of their age and/or because they suffer from medical conditions

26    that render them uniquely vulnerable.

27    106.    Because of the conditions at Lompoc, Petitioners and Class members

28    cannot take steps to protect themselves—such as social distancing, hand-washing

1  hygiene, or self-quarantining—and the government has not provided adequate

2  protections. As COVID-19 rapidly spreads inside Lompoc, the already deplorable

3  conditions at the prison will continue to deteriorate, and incarcerated individuals

4  there will continue to contract COVID-19 at staggering rates. Due to inadequate

5  medical care at Lompoc, the health and safety of those who contract COVID-19 will

6  be put in unconstitutional danger.

7      107.  Petitioners contend that the fact of their confinement in prison itself

8  amounts to an Eighth Amendment violation under these circumstances, and nothing

9  short of an order ending their confinement at Lompoc will alleviate that violation.

10      108.  Respondent's failure to adequately protect Petitioners from these

11  unconstitutional conditions, or release them from the conditions altogether,

12  constitutes deliberate indifference to a substantial risk of serious harm to Petitioners,

13  and all members of the Class, thereby establishing a violation of the Eighth

14  Amendment to the United States Constitution.

15      109.  Respondents were aware or should have been aware of these

16  conditions, which were and are open and obvious throughout the entire prison

17      110.  Respondents knew of and disregarded an excessive risk to health and

18  safety.

19      111.  Respondents failed to act with reasonable care to mitigate these risks,

20  subjecting Petitioners to a grave and serious risk of harm of serious illness,

21  permanent injury, or death.

22      112.  Because Respondents failed to act to remedy Petitioners' and the

23  Class's degrading and inhumane conditions of confinement in violation of their

24  Eighth Amendment rights, Petitioners seek relief under this Writ of Habeas Corpus

25  Petition and Class Action Complaint.

26      113.  Because of the unlawful conduct of Respondents, Petitioners and the

27  Class are threatened with imminent physical injury, pain and suffering, emotional

28  distress, humiliation, and death.

# EXHIBIT 8

## SECOND CLAIM FOR RELIEF

### (Eighth Amendment)

### Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution

### Injunctive Relief Only

U.S. Const, Amend. VIII; 28 U.S.C. § 1331; 5 U.S.C. § 702

*Class versus All Defendants in their Official Capacities*

114.    Petitioners incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

115.    Petitioners bring this claim on their own behalf and on behalf of the Class.

116.    This claim does not seek the release of any members of the Class and accordingly is not maintained pursuant to 28 U.S.C. § 2241. However, it is well-established that individuals may sue to enjoin constitutional violations, either directly under the Constitution or under the Administrative Procedure Act. *See Sierra Club v. Trump*, 929 F.3d 670, 694 (9th Cir. 2019) ("Plaintiffs may bring their challenge through an equitable action to enjoin unconstitutional official conduct, or under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, as a challenge to a final agency decision that is alleged to violate the Constitution, or both."); *Fazaga v. FBI*. 916 F.3d 1202, 1239–1241 (9th Cir. 2019) (permitting claims against federal officials in their official capacities for injunctive relief directly under the Fourth Amendment, even though Privacy Act provides for other remedies, and contrasting them to direct actions under the Fourth Amendment for money damages, which are *Bivens* claims); *Jones v. Hurwitz*, 324 F. Supp. 3d 97, 100 (D.D.C. 2018) (finding that a *Bivens* claim could not be maintained because allegations were against defendants in their official capacities but that equitable action could have been maintained as a "direct cause of action arising under the Constitution"); *Farmer v. Brennan*. 511 U.S. 825, 846

43

3652391.1

EXHIBIT _9_

Case 2:22-cv-08804-VBF-PD    Document 1    Filed 12/05/22    Page 40 of 63    Page ID
#:40
se 2:20-cv-04450-CBi    VC    Document 419-1    Filed 05/2    2    Page 45 of 49    Page ID
#::13092

1  (1994) ("If the court finds the Eighth Amendment's subjective and objective

2  requirements satisfied" with regard to a federal prisoner, "it may grant appropriate

3  injunctive relief.").

4      117.  Because of the conditions at Lompoc, Petitioners and Class members

5  cannot take steps to protect themselves—such as social distancing, hand-washing

6  hygiene, or self-quarantining—and the government has not provided adequate

7  protections. As COVID-19 rapidly spreads inside Lompoc, the already deplorable

8  conditions at the prison will continue to deteriorate, and incarcerated individuals

9  there will continue to contract COVID-19 at staggering rates.

10      118.  Respondent's failure to adequately protect Petitioners from these

11  unconstitutional conditions, or release them from the conditions altogether,

12  constitutes deliberate indifference to a substantial risk of serious harm to Petitioners,

13  and all members of the Class, thereby establishing a violation of the Eighth

14  Amendment to the United States Constitution.

15      119.  Because of the unlawful conduct of Respondents, Petitioners and the

16  Class are threatened with imminent physical injury, pain and suffering, emotional

17  distress, humiliation, and death.

18                      **VIII.**

19              **RELIEF REQUESTED**

20      WHEREFORE, Petitioners, and the Class respectfully request that the Court:

21      1.  Declare that Lompoc's custody of Petitioners and the Class violates the

22  Eighth Amendment right against cruel and unusual punishment with respect to

23  Petitioners and the Class;

24      2.  Order a highly expedited process—for completion within no more than

25  48 hours—for Respondents to use procedures available under the law to review

26  members of the Class for enlargement of custody to home confinement (or bail

27  pending habeas corpus) in order to reduce the density of the prison population to

28  a number that allows for the implementation of appropriate measures to prevent the

44

Case 2:22-cv-08804-VBF-PD    Document 1    Filed 12/05/22    Page 41 of 63   Page ID
#:41
se 2:20-cv-04450-CBM    JVC    Document 419-1   Filed 05/2    22   Page 46 of 49   Page ID
#::13093

1    spread of COVID-19, during the pendency of this petition for a writ of habeas

2    corpus;

3          3.    Order respondents to comply with the Constitution for any Class

4    members who do not receive temporary enlargement and remain at Lompoc during

5    the pendency of the petition;

6          4.    Grant a writ of habeas corpus for all members of the class that received

7    temporary enlargement within one day of the Court's order and release all such

8    persons within twenty-four hours;

9          5.    Enter a temporary restraining order, preliminary injunction and

10   permanent injunction requiring Respondents to immediately adopt mitigation efforts

11   to protect all Class Members not released, including but not limited to:

12               A.    Providing adequate spacing of six feet or more between

13                     incarcerated people so that social distancing can be

14                     accomplished in accordance with CDC guidelines;

15               B.    Ensuring that each incarcerated person receives, free of

16                     charge, an individual supply of hand soap and paper

17                     towels sufficient to allow frequent hand washing and

18                     drying each day; an adequate supply of clean implements

19                     for cleaning such as sponges and brushes and disinfectant

20                     hand wipes or disinfectant products effective against the

21                     virus that causes COVID-19 for daily cleanings;

22               C.    Ensuring that all incarcerated people have access to hand

23                     sanitizer containing at least 60% alcohol;

24               D.    Providing access to daily showers and daily access to

25                     clean laundry, including clean personal towels and

26                     washrags after each shower;

27               E.    Requiring that all Lompoc staff wear personal protective

28                     equipment, consistent with the CDC guidance, including

*BOP ?*

*FAIL*

*TO*

*PROVIDE*

3652391.1

45

4012605721

1          masks and gloves, when interacting with any person or

2          when touching surfaces in cells or common areas;

3     F.    Requiring that all Lompoc staff wash their hands, apply

4          hand sanitizer containing at least 60% alcohol, or change

5          their gloves both before and after interacting with any

6          person or touching surfaces in cells or common areas;

7     G.    Taking the temperature of all class members and screening

8          for symptoms of COVID-19 of all class members, prison

9          staff, and visitors daily (with a functioning and properly

10         operated and sanitized thermometer) to identify potential

11         COVID-19 infections;

12    H.    Assessing (through questioning) each incarcerated person

13         daily to identify potential COVID-19 infections;

14    I.    Ensuring that all class member and prison staff exposed to

15         individuals with known cases of COVID-19 be isolated

16         from individuals who have not tested positive.

17    J.    Immediately providing on a daily basis clean masks for all

18         individuals who display or report potential COVID-19

19         symptoms until they can be evaluated by a qualified

20         medical professional or placed in non-punitive quarantine

21         and ensure the masks are properly laundered with

22         replacements as necessary;

23    K.    Ensuring that individuals identified as having COVID-19

24         or having been exposed to COVID-19 receive adequate

25         medical care and are properly quarantined (without

26         resorting to cohorting, if possible), in a non-punitive

27         setting, with continued access to showers, recreation,

28         mental health services, reading materials, phone and video

3652391.1                               40

1    visitation with loved ones, communications with counsel,

2    and personal property;

3    L.    Cleaning and disinfecting frequently touched surfaces with

4    disinfectant products effective against the virus that causes

5    COVID-19 (at the manufacturer's recommended

6    concentration), as well as surfaces in common areas, every

7    two hours during waking hours, and at least once during

8    the night;

9    M.    Assuring incarcerated people are told they will not be

10    retaliated against for reported COVID-19 symptoms;

11    N.    Providing necessary medical treatment consistent with

12    community standards for incarcerated people who are ill

13    because of COVID-19;

14    O.    Responding to all emergency (as defined by the medical

15    community) requests for medical attention within an hour;

16    P.    Crafting a mechanism to ensure compliance through the

17    appointment of an independent monitor with medical

18    expertise to ensure compliance with these conditions, and

19    provide the monitor with unfettered access to medical

20    units, confidential communication with detained

21    individuals in and out of quarantine, and surveillance

22    video of public areas of the facilities;

23    6.    Certify this petition as a class action, for the reasons stated herein;

24    7.    Award Plaintiffs' attorneys' fees and costs, as provided by statute and

25    law; and

26    8.    Order such other and further relief as this Court deems just, proper and

27    equitable.

28    3652391.1    *Local Rule 5-4.3.4(a)(2)(i) Compliance: Filer attests that all other*

47

4012605721

# EXHIBIT 10

1    corresponding declaratory relief is appropriate respecting the class as a whole."

2    Here, Respondents' failure to make prompt and reasonable use of home

3    confinement and compassionate release in light of the pandemic which takes into

4    account inmates' age and medical conditions is applicable to each member of the

5    class so that injunctive relief is appropriate as to the class as a whole  Accordingly,

6    the Court finds Rule 23(b)(2) is satisfied.

## IV.    CONCLUSION

8       Accordingly, the Court **GRANTS** Petitioners' Motion for Preliminary

9    Injunction and *Ex Parte* Application for Provisional Class Certification as follows:

   1.   The Court certifies, on a provisional basis, a class defined as "all
        current and future people in post-conviction custody at FCI Lompoc
        and USP Lompoc over the age of 50, and all current and future
        people in post-conviction custody at FCI Lompoc and USP Lompoc
        of any age with underlying health conditions, including chronic
        obstructive pulmonary disease; serious heart conditions such as heart
        failure, coronary artery disease, or cardiomyopathies; Type 2
        diabetes; chronic kidney disease; sickle cell disease;
        immunocompromised state from a solid organ transplant; obesity
        (body mass index of 30 or higher); asthma; cerebrovascular diseases;
        cystic fibrosis; hypertension or high blood pressure;
        immunocompromised state from blood or bone marrow transplant;
        immune deficiencies, HIV, or those who use corticosteroids, or use
        other immune weakening medicines; neurologic conditions such as
        dementia; liver diseases; pulmonary fibrosis; thalassemia; Type 1
        diabetes; and smokers (hereinafter, "Underlying Health
        Conditions")";

   2.   <u>No later than July 20, 2020</u>, Respondents shall file under seal a list
        with the Court which:  (a) identifies all members of the class defined
        in this Order; (b) identifies each class member's sentencing court and
        the criminal case number; and (c) identifies whether the class
        member has (i) submitted a request for compassionate release, and if
        so whether a decision has been made as to the request, and (ii) been
        reviewed for home confinement since March 26, 2020, and if so,
        whether the inmate has been designated for home confinement;

   3.   <u>No later than July 22, 2020</u>, Respondents shall file a declaration

Case 2:22-cv-08804-VBF-PD    Document 1    Filed 12/05/22    Page 46 of 63   Page ID
#:46
2:20-cv-04450-CBM-PVC    Document 145   Filed 07/14/20   Page 49 of 50   Page ID #:1736

1      setting forth the process used to identify the class members in the list
2   filed;

3   4.     <u>No later than July 22, 2020</u>, notify inmates that they are being
      considered for home confinement and institute a process, including
4         free telephone calls or emails to their families so that inmates can
5         provide Respondents with a plan for release to home confinement,
      which includes any information about their ability to quarantine for
6         14 days upon release;

7   5.     <u>No later than July 28, 2020</u>, Respondents shall make full and speedy
8         use of their authority under the CARES Act and evaluate each class
      member's eligibility for home confinement which gives substantial
9         weight to the inmate's risk factors for severe illness or death from
10        COVID-19 based on age (over 50) or Underlying Health Conditions;

11  6.     <u>No later than July 29, 2020</u>, Respondents shall file under seal a
12        declaration setting forth a list of class members whom Respondents
      have determined are eligible for home confinement, and an
13        explanation for each denial of home confinement of any class
14        member, including an explanation of the factual basis for any factors
      determined to outweigh the danger to the inmate from COVID-19;
15

16  7.     <u>No later than July 22, 2020,</u> file a declaration setting forth criteria
      for compassionate release which takes into account COVID-19, and
17        an explanation if no such criteria for compassionate release exists
18        which takes into account COVID-19 as to Lompoc inmates; and

19  8.     <u>No later than August 3, 2020</u>, for any Lompoc inmate who has
      made a written request for compassionate release based on COVID-
20        19 but has not received a decision, Respondents shall provide written
21        notice of either (a) a referral of the matter in writing with
      recommendation of approval of the request pursuant to 28 C.F.R. §
22        571.62, or (b) a denial of the request and copy of the applicable
23        appeal form pursuant to 28 C.F.R. §§ 571.63, 542.15.

24  /// 
25  /// 
26  /// 
27  /// 
28  ///

EXHIBIT //



AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Southern California

Thank you for contacting the ACLU regarding the Lompoc class action.

On June 28, the Court granted our motion for preliminary approval of the settlement agreement in the Lompoc class action, *Garries v. Milusnic*, 20-CV-4450 CBM (PVCx) (C.D. Cal). Friends and family members of class members may access a copy of the proposed settlement agreement, our motion for attorneys' fees, and the class notice on the ACLU's website at https://www.aclusocal.org/en/cases/garries-v-milusnic. We believe, given the ever-evolving facts related to COVID-19, the amount of time that has passed since the lawsuit started, and the temporary nature of BOP's home confinement authority under the CARES Act, that this settlement is the best possible outcome that can be achieved through this lawsuit. We remain thankful to the brave class members who agreed to be named plaintiffs on both the original and amended complaints, as well as to the many class members and loved ones who have provided us with critical updates and information that made this litigation possible.

We have received numerous questions regarding the settlement. Due to the volume of communications we receive, we cannot address or respond to all of these inquiries. Below, we respond to the most common questions:

1. **What are the terms of the settlement agreement?** In summary, the settlement requires Respondents at Lompoc to do the following until (1) December 17, 2022, (2) the National Emergencies Act terminates, or (3) the Attorney General determines emergency conditions are no longer materially affecting the functioning of the BOP, whichever comes first:

   - Continue to comply with the Court's previous orders regarding home confinement, which bar the BOP from denying people home confinement based solely on time-served or the nature of a prior offense, and which require the BOP to transfer people to home confinement within one month of approval.
   - Comply with the BOP Pandemic Response Plan guidelines, including:
     - Testing for COVID-19 systematically, including re-testing of close contacts of positive patients during widespread institution transmissions.
     - Performing daily symptoms checks for all people who have been placed in quarantine.
     - Screening workers assigned to health services units for symptoms of COVID-19.
     - Making medical isolation in the SHU "operationally distinct" from disciplinary or restricted housing by providing daily medical visits, access to mental health services, efforts to provide similar access to radio, clock/watch, reading materials, personal property, and commissary as in regular housing units, and consider increased telephone privileges to maintain mental health and connection during isolation.

EXECUTIVE DIRECTOR Hector O. Villagra

CHAIR Michele Goodwin  VICE CHAIRS Rob Hennig and Stacy Horth-Neubert
CHAIRS EMERITI Marla Stone  Shari Leinwand  Stephen Rohde  Danny Goldberg  Allan K. Jonas*  Burt Lancaster*  Irving Lichtenstein, MD*
Jarl Mohn  Laurie Ostrow*  Stanley K. Sheinbaum*
*deceased

Page 3

7. Who will be re-reviewed for home confinement under the Settlement Agreement? The Settlement Agreement does not require Lompoc to re-review anybody who has already been denied. It requires Lompoc to continue reviewing class members for home confinement in compliance with the Court's existing home confinement orders for the duration of the term stated in the Settlement Agreement. The Court's prior orders (and therefore the Settlement Agreement) require that Lompoc do the following:

   a. Make full and speedy use of BOP's CARES Act authority to review members of the Settlement Class for transfer to home confinement;
   b. Assign substantial weight to the class member's risk factors for severe illness and death from COVID-19 based on age (over 50) or Underlying Health Conditions;
   c. Refrain from denying a class member home confinement under the CARES Act on the sole basis of the amount of time served or some other variation of a time component without other good cause;
   d. Refrain from denying a class member home confinement under the CARES Act on the sole basis of a prior offense without other good cause;
   e. If home confinement is denied, provide a declaration to counsel for Plaintiff-Petitioners explaining in detail why the reasons for denial substantially outweigh the class member's risk factors for severe illness and death from COVID-19.

Class counsel will be monitoring the review worksheets, and if any denials appear to be out of compliance with the Court's preliminary injunction orders, class counsel will request Lompoc to re-review those individuals. Ultimately, it will be Lompoc's decision whether to re-review any class member and whether to grant anyone home confinement. If class counsel determines Lompoc is in breach of the Settlement Agreement, class counsel will seek relief from the Court in accordance with the Settlement Agreement.

8. Can I apply to be re-reviewed for home confinement under the Settlement Agreement? Class members who believe they have been wrongfully denied home confinement can submits requests with their case managers to seek re-review.



9. What is the status of the 2241 motions seeking "Immediate Release" that were filed with the Court? Class counsel will request that the Court consider the recent emergency motions filed by class members under 28 U.S.C. 2241 as part of its evaluation and determination of the final approval of the proposed settlement agreement.

We hope the above has answered many of your questions. Please note that if you have mailed us an Objection, comment, or Petition for Release, we will be filing that correspondence with court after the comment period closes.

EXHIBIT 12

# Ex-Officer Is Sentenced To Prison In Floyd Case

BY JOE BARRETT

Former Minneapolis Police Officer Thomas Lane was sentenced to 2½ years in federal prison for violating the civil rights of George Floyd, who was killed in police custody in May 2020, sparking a national conversation about police treatment of Black people.

Mr. Lane and fellow officers J. Alexander Kueng and Tou Thao were convicted in February of showing deliberate indifference to Mr. Floyd's serious medical need as he lay handcuffed and face down in the street with former officer Derek Chauvin kneeling on his neck and back for over nine minutes.

Mr. Chauvin, who was convicted of second-degree murder in state court, pleaded guilty to federal civil-rights charges and was sentenced this month to more than 20 years in federal prison.

Messrs. Kueng and Thao have yet to face sentencing on the federal charges. Mr. Lane has pleaded guilty to state charges of aiding and abetting manslaughter.

Mr. Lane had been a full-fledged officer for only a few days when he and Mr. Kueng, also a rookie, were called to a convenience store on a report of someone using a fake $20 bill.

They found Mr. Floyd unwilling to get into a police car, according to video and evidence presented at trial. When Mr. Chauvin, a 19-year veteran, arrived, he led the others in wrestling Mr. Floyd to the street and then kneeled on his neck and back, while Mr. Kueng kneeled on his back and Mr. Lane controlled his legs. Mr. Thao kept at bay onlookers.

Twice Mr. Lane asked Mr. Chauvin if they should turn Mr. Floyd over to help him breathe and twice Mr. Chauvin said no, according to evidence presented at trial.

EXHIBIT _13_



**Office of the Attorney General**
**Washington, D. C. 20530**

March 26, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU PRISONS

FROM:  THE ATTORNEY GENERAL

SUBJECT:  <u>Prioritization of Home Confinement As Appropriate in Response to</u>
<u>COVID-19 Pandemic</u>

Thank you for your tremendous service to our nation during the present crisis. The current situation is challenging for us all, but I have great confidence in the ability of the Bureau of Prisons (BOP) to perform its critical mission during these difficult times. We have some of the best-run prisons in the world and I am confident in our ability to keep inmates in our prisons as safe as possible from the pandemic currently sweeping across the globe. At the same time, there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities. I am issuing this Memorandum to ensure that we utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody.

## I.  <u>TRANSFER OF INMATES TO HOME CONFINEMENT WHERE APPROPRIATE TO DECREASE THE RISKS TO THEIR HEALTH</u>

One of BOP's tools to manage the prison population and keep inmates safe is the ability to grant certain eligible prisoners home confinement in certain circumstances. I am hereby directing you to prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic. Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care. But for some eligible inmates, home confinement might be more effective in protecting their health.

In assessing which inmates should be granted home confinement pursuant to this Memorandum, you are to consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

Memorandum from the Attorney General

Subject: Department of Justice COVID-19 Hoarding and Price Gouging Task Force

Page 2



- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

In addition to considering these factors, before granting any inmate discretionary release, the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement. We should not grant home confinement to inmates when doing so is likely to increase their risk of contracting COVID-19. You should grant home confinement only when BOP has determined—based on the totality of the circumstances for each individual inmate—that transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19.

## II.    PROTECTING THE PUBLIC

While we have an obligation to protect BOP personnel and the people in BOP custody, we also have an obligation to protect the public. That means we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19, or put the public at risk in other ways. I am therefore directing you to place any inmate to whom you grant home confinement in a mandatory 14-day quarantine period before that inmate is discharged from a BOP facility to home confinement. Inmates transferred to home confinement under this prioritized process should also be subject to location monitoring services and, where a court order is entered, be subject to supervised release.

We must do the best we can to minimize the risk of COVID-19 to those in our custody, while also minimizing the risk to the public. I thank you for your service to the country and assistance in implementing this Memorandum.

# EXHIBIT 14

## Monthly Updates

13.    In lieu of filing reports with the district court, the Respondents shall
provide Petitioners' counsel with monthly updates ("Monthly Updates") to the
class list, Review Worksheets, and charts of class members approved for
placement on home confinement reflecting dates of projected release and dates of
actual release, through the termination date of this Agreement. The Monthly
Updates shall also include a report regarding FCC Lompoc's compliance with the
provisions of paragraphs 8 – 12 of this agreement, for as long as the referenced
Modules of the BOP COVID-19 Pandemic Response Plan and COVID-19
Modified Operations Matrix remain in effect.

## Resolution and Release of Claims/No Admission of Wrongdoing

14.    The parties agree that this Agreement resolves all claims in the above-
captioned case.

15.    Upon final approval of this Agreement by the district court, the named
Petitioner and all members of the Settlement Class, as defined in Paragraph 2
above, individually and behalf of all their respective heirs, beneficiaries, successors
and assigns, in consideration of the benefits of this Agreement, release and forever
discharge the Respondents and BOP, and all their respective present and former
officers, employees, agents, heirs, successors and assigns, from all actions, causes
of action, suits, claims, or controversies, for any and all forms of non-monetary
relief arising from or based on either: (i) any denial of home confinement or
exercise of the BOP's statutory authority under the CARES Act to transfer
prisoners to home confinement which may be brought during the time this
Agreement is in effect, except as otherwise provided under this Agreement, or (ii)
any acts or omissions alleged or that could have been alleged in the Action relating
to risks associated with the COVID-19 pandemic occurring prior to the Effective
Date. For the avoidance of doubt, this release applies to any and all Class

1   Members' habeas corpus cases pursuant to 28 U.S.C. § 2241 seeking any relief due

2   to the COVID-19 pandemic for acts or omissions occurring prior to the Effective

3   Date.

4        16.   This Agreement shall in no way be deemed an admission by any party

5   of liability, fault, misconduct, or a violation of any policies, procedures, or federal,

6   state, or local laws or regulations. Neither this Agreement nor the fact of this

7   settlement shall be construed to be, nor shall it be, admissible in any proceeding as

8   evidence of an admission by any party of a violation of any policies, procedures, or

9   federal, state, or local laws or regulations; nor shall this Agreement or the fact of

10   settlement constitute evidence of any admission by any party as to any issue of law

11   or fact. This Agreement is entered into by all parties for the purposes of

12   compromising disputed claims and avoiding the expenses and risks of litigation.

13   This Agreement shall only ever be admissible in a proceeding to enforce its terms.

14                  **Duration and Termination of Settlement**

15        17.   The parties intend that this Agreement will remain in place until a)

16   December 17, 2022, b) the day the national emergency declaration with respect to

17   the Coronavirus Disease 2019 (COVID–19) under the National Emergencies Act

18   (50 U.S.C. 1601 et seq.) terminates; or c) the day the Attorney General determines

19   that emergency conditions no longer materially affect the functioning of the Bureau

20   of Prisons, whichever is earlier, but upon the mutual consent of the parties, this

21   date of termination may be modified, shortened or extended.

22        18.   Upon termination of this Agreement, without the need for any further

23   order of any state or federal court, all jurisdiction of any court to enforce this

24   Agreement shall end, apart from the enforcement of any judgment or order to pay

25   fees and costs.

26

27

28

# EXHIBIT 15

AAAHC

# Notice of Accreditation Survey

Name of Organization: ___FCC Lompoc_____

☐ This is an Unannounced survey, or

☒ The Survey date(s) are: ___August 22-23, 2022_____

The above-named organization has voluntarily requested this accreditation survey as a means of having a third-party review of the entire organization to build upon strengths or identify opportunities to improve its delivery of safe, high-quality health care. The survey will evaluate the organization's compliance with AAAHC Standards for ambulatory health care organizations and to determine if accreditation should be awarded to, or retained by, this organization.

Members of the general public, patients, and individuals on the staff of this organization, believing that they have relevant and valid information about this organization's provision of health care or compliance with AAAHC Standards, may request to present this information to AAAHC surveyors at the time of the survey or may communicate such information in writing or by telephone to the AAAHC office.

All information received from identified individuals at or prior to the survey will be considered in making the accreditation decision. The information presented will not be debated with the reporting individual. Requests for presentation must be received at least two weeks prior to the survey in order to allow sufficient time to schedule presentations.

A request to present or report information may be communicated in writing by mail to the address below; email to feedback@aaahc.org; or by telephone as listed below.

Accreditation Association for Ambulatory Health Care, Inc.
5250 Old Orchard Road, Suite 200  Skokie,
IL 60077
Telephone: 847.853.6060
FAX: 847.853.9028

This Notice of Accreditation Survey is posted in accordance with AAAHC requirements, and may not be removed until after the survey has concluded, or until it has been posted for 30 days if the survey ends prior to that period.

Date This Notice Was Posted: July 29, 2022_____

Staff Name: C. Hansen_____  Title: Health Services Administrator

Accredation Association for Ambulatory Health Care, Inc.
5250 Old Orchard, Suite 200
Skokie, IL  6077

August 8, 2022

re:  Pending re-accreditation of Lompoc FCI on August 22-23

Dear Sir or Madam:

    I wish a personal encounter during your visit to share detailed information on the unconstitutional conditions of confinement at Lompoc as pertain to deficient medical care.

    Time does not allow a complete description of the deplorable conditions we encounter on a daily basis, below I touch solely on a few highlights.  As an incarcerazted 75-year old man with more than normal medical  complications I am particularly qualified to advise your inspectors.  Also, as an inmate, I am financially stressed in my ability to provide you with copies of email medical requests, medical files, and reports to the ACLU in a class-action  suit over unconstitutional conditions of confinement.  Lack of medical care is a major component.

Lompoc FCI Medical Problems in General:

1:   There is no sick call triage.  At the peak of the first COVID wave normal sick call triage was cancelled entirely.  A fequest form was required to obtain aaccess to health services or email request via in-house services. Email is NEVER answered.  Request forms are never answered and rarely responded to.  Even the drop box for request forms has been removed. Serious medical conditions do not permit weeks and months of delay.
2:   Quality of health care is poor.
3:   Scheduled access requires standing outside in harsh environments for hours.
4:   Waiting rooms are inaccessible.
5:   Deliberate Indifference and Negligence has killed inmates and causing irreversible harm to others.

Specific Problems:

6:   I require a complete shoulder replacment due to deliverate indifference which delayed prompt orthoscopic surgery which would have solved the injury.
7:   I have been waiting almost three years for shoulder replacement, prescribed by outside specialists, ordered by medical staff and canceled by administration.
8:   Irreversible kindney damage is being caused by  pain relievers for #6 & #7
9:   Medically prescribed hernia surgery has been repeatedly ordered and canceled for six years.
10:  Staff is bullying men into canceelling medical care outside under threat of being quarantined in a sensory deprivation chamber for weeks or months.
11:  Traumatic Mental Health care for PTSD from 2½ years of lockdown is unavailable.
22:  Administrative remedies are effectively impossible.
13:  Staff do not practice infection control, many do not wear PPE.

    These are just the tip of the iceberg.  A personal interview will expose additional failures and a mass of documentation for copying.  Attached are recent examples of just one inmates plight.

Respectfully,

Albert Lee Mitchell, 69428047
Federal Correction Institute
3600 Guard Road

Date: 11/21/2022                                                                  Location: LOX
Time: 06:05:08 PM

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF PRISONS

### Request for Withdrawal of Inmate's Personal Funds

LOF-G-A, 13411104 - MEDINA, MAURICIO

| Encumbrance No.:  697 |
|---|

Please charge to my account the sum of **$5.00** and authorize the same to be paid to:

<u>Contact/FMIS Certification Address</u>
**House, Us Court**
**411 W 4TH ST**
**room 1053**
**SANTA ANA**
**CA 92701**
**United States**

Purpose:  **Court Fees**

Check Memo:

_____
(Signature of Inmate)

13411104 - MEDINA, MAURICIO
_____
(Inmate Register No./Name)

_____
(Signature of Approving Official)

_____
(Signature of Deposit Fund Tech)

_____
(Payment #)

The inmate's personal account has been charged in the amount indicated above.

BP - 199.045 - Jan 2008



LEGAL MAIL

⬦13411-104⬦
Us Court House
411 W 4TH ST
room 1053
Santa ANA, CA 92701

EXPECTED DELIVERY DAY: 12/05/22

USPS TRACKING® #

9505 5133 7232 2337 8832 72

U.S. POSTAGE PAID
FCM LG ENV
LOMPOC, CA
93436
DEC 03, 22
AMOUNT
$0.40
R2308M1547B9-12

92701

RDC 04

RECEIVED
CLERK, U.S. DISTRICT COURT

DEC - 5 2022

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

Mauricio Medina
3600 Guard RD
Lompoc, CA 93436
United States

LEGAL MAIL

FCC LOMPOC
3901 KLEIN BLVD
LOMPOC, CA 93436

DATE _____

The following letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened or inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer enclosed correspondence for forwarding to another address, please return the enclosed to the above address.